RESTORA McPIKE, Administrator of the Estate of CHARLES HARDIN McPIKE, Respondent, v. FRIEDMAN LOAN and MERCANTILE COMPANY, a corporation, Appellant.

St. Louis Court of Appeals. Opinion Filed February 8, 1921.

1. **LAWS: Statutes: Case Falling Within Perview of Statute: Cannot be Excepted From Its Operation. Even Though Equitable.** A case which falls within the perview of a statute cannot be excepted from its operation, unless it comes clearly within an exception named therein; that is to say, courts cannot *sua sponte* except cases from the operation of the law, but must take the law and apply it as the Legislature made and intended it, even when the exception would be an equitable one.

2. **PAWNBROKERS: Pawns: Forfeiture: Death of Pledgor: Period of Redemption Not Tolled Pending Appointment of Administratrix: Limitations: Statute Begun to Run During Life of Pledgor Continues.** The sixty days' redemption period, after default, allowed by section 10280, Revised Statutes 1909, to redeem pawned articles, is analogous to the various statutes of limitations, and after the statute has begun to run in the lifetime of the testator or intestate, it does not cease to run within the time which may elapse between his death and the date of the appointment and qualifying of an administrator, and *held* that, absent any exception in the statute itself, the sixty days' period having once begun to run, the running of the right of redemption was not tolled for the period intervening from the date of pledgor's death until the appointment of his administratrix.

Appeal from the Circuit Court of the City of St. Louis.— *Hon. George H. Shields,* Judge.

REVERSED.

*Gustav L. Stern,* and *Marvin E. Boisseau* for appellant.

The plaintiff cannot recover in this case, because: (1) No payment of principle or interest was made within the time required by law. Revised Statutes 1909, sec. 10280; 1 Wood on Limitations, vol. 1, page 12; Angell on Limitations, page 51; Schleuter v. Albert, 39 Mo. App. 154, 160; Stanton v. Gibbins, 103 Mo. App. 267; Griesel v. Jones, 123 Mo. App. 45, 50; Austin v. Shipman, 160, Mo. App. 206, 217; Rhodes v. Smethurst, 16 English Ruling Cases 146; Daniel v. Day, 51 Ala. 431; Meeks v. Vassault, 3 Sawyer (U. S.) 206; Granger's Adm'r v. Granger, 6 Ohio 35; Nicks v. Martindale, 1 Harper (So. Car.) 32; Baker v. Brown, 18 Ill. 91; Brown v. Merrick, 16 Ark. 612; Kistler v. Heuth, 75 Ind. 177; Sambs v. Stein, 53 Wisc. 569; (2) Even if the time intervening between the death of decedent and the appointment of administratrix be excluded, the tender was made too late. Revised Statutes 1909, sec. 8057; Revised Statutes 1909, sec. 10280; Knox v. Kelsey, 102 Mo. 291; Lenox v. Harrison, 88 Mo. 491; Ramsey v. Henderson, 91 Mo. 560. (3) No affidavit of the loss of the pawn ticket was presented within the proper time. Revised Statutes, 1909, sec. 10280.

*Abbott, Fauntleroy, Cullen & Edwards* for respondent.

The court will notice that at the time defendant forfeited the pledge, his right to forfeiture had not accrued, because McPike had died some days before. He had no right, while his debtor was dead, and before letters of administration were taken out, to take any action to forfeit his rights. The law on this proposition seems to be settled beyond controversy. In case of a wrongful conversion after decedent's death the statute does not begin to run until after the appointment of the administrator. The statute begins to operate only from the time the right to demand the property vests in someone. Parks v. Norris, 101 Mich. 71, 59 N. W. 428; Johnson v. Wren, 3 Stew.

(Ala.) 172; Haslett v. Glenn, 7 Harr & J. (Md.) 17; Fishwick v. Sewall, 4 Harr & J. (Md.) 393; Witt v. Elmore, 2 Bailey (S.C.) 595; Pratt v. Swaine, 8 B. & C. 285, 6 L. J. K. B. O. S. 353, 2 M. & R. 350, 15 E. C. L. 146. Such is the law in Missouri (see Polk v. Allen, 19 Mo. 467).

BECKER, J.—This is a suit for conversion instituted by Restora McPike, administratrix of the estate of Charles Hardin McPike, deceased. While the suit was pending the plaintiff died and the suit was revived in the name of R. Lee Alford, administrator *de bonis non* of the estate of Charles Harding McPike, deceased, who was substituted as plaintiff.

It appears that Charles Hardin McPike was the owner of a diamond ring of the alleged value of $350. On the first day of September, 1911, he went to the defendant's place of business and borrowed the sum of $100 and pawned a diamond ring as a pledge and as security for the repayment of said loan. The defendant issued the usual pawnbroker's ticket to McPike covering the said transaction. The said pawn ticket was dated St. Louis, Missouri, September 1, 1911, and amongst other things contained the following: "Received in pledge of party who signed original contract, which bears duplicate number, as security for a loan, due and payable thirty days after date, for the sum of $100 . . . the following property, to-wit: diamond ring. This loan subject to forfeiture if interest is not paid within ninety days."

It further appears that neither the principal nor the interest was paid within the thirty days after the date of the loan and having kept the ring until December 3, 1911, no payment of principal or interest having been made, the defendant forfeited the pledge and sold the ring for the sum of $110.

According to the record Charles Hardin McPike died on November 26, 1911, four days before the time in which he had to redeem his pledge had expired. On December 4, 1911, Restora McPike was appointed administratrix of the estate of the said Charles Hardin McPike, deceased, said administratrix, however, though she had not been

able to find the said pawn ticket, called upon the defendant on the eighth or ninth of December, 1911, made a tender of the sum necessary to pay the loan and the accrued interest thereon, but was informed by the defendant that it had already, theretofore, sold and disposed of the ring.

There is testimony which bears upon the question as to whether the administratrix, at the time she made her said tender, had produced the required affidavit that the pawn ticket had been lost, and also some testimony as to the value of the diamond ring, but we need not set it forth herein in view of the conclusion we have arrived at in the case.

Examining the chapter in our statutes (1909) relating to ''Pawn Brokers,'' we find that section 10280 thereof provides that ''in case the person obtaining the loan fails to pay the interest when due, the pawn broker shall not sell the article or articles so pawned with him as security for such loan; until after the expiration of sixty days from the date of such failure, and the person so failing may at any time within the said sixty days redeem said article or articles; provided that he pay the full amount of principal and interest due, according to the terms of the contract at the date of redeeming; but if the person obtaining the loan fails to redeem said article or articles within said sixty days, as above provided, he shall thereby forfeit all his right, title and interest in and to said articles to the pawn broker. who shall hereby acquire and possess an absolute right in them and to hold and dispose of them as his own property.        '

The court in submitting the case to the jury, in an instruction given at the request of plaintiff, instructed them that in determining whether plaintiff had made a tender within ninety days of the date of the loan, they should exclude ''the days intervening between the death of Charles Hardin McPike and the time letters of administration were taken out on the estate.''

Whether the action of the court in so doing was error or not is the question which is determinative of this case.

We have been cited no cases by either learned counsel for appellant or for respondent, nor has our own investigation found any bearing directly upon the point in question. We have, after mature consideration of the question in hand, come to the conclusion that the court was in error in directing the jury to exclude, in determining whether the tender by plaintiff had been made within ninety days of the date of the loan, the days intervening between the death of McPike and the date on which letters of administration were taken out on his estate.

It must be conceded that McPike having borrowed the $100 from the defendant on September 1, 1911, for a period of thirty days, and not having paid either the principal or the interest when due, the said McPike then, under section 10280, supra, had a period of sixty days from such due date in which to redeem the pledge upon payment of the principal and interest due up to the date of payment. McPike's right of redemption under the statute in this instance therefore began to run on October 1, 1911, and in default of redeeming the diamond ring by him within the said sixty days' period allowed for redemption, as provided by the said statute, forfeited all his right, title and interest in and to such article, to the pawn broker, the defendant in this case, who thereby acquired and possessed an absolute right in the ring, including the right to dispose of it as his own property.

But it is seriously contended that even though McPike died after the period of his right of redemption had begun to run, yet since, at the date of his death there still remained four days before his right to redeem the pledge had expired, and since the administratrix of his estate was not appointed until eight days after his death, the running of the right of redemption was tolled for the period of eighty days intervening from the date of McPike's death until the appointment of his administratrix. To this we do not agree. For when we examine the statute we find no such exception mentioned therin. And no citation of authority is necessary for the proposition that a case which falls within the purview of

a statute cannot be excepted from its operation unless it comes clearly within an exception named therein, that is to say courts cannot *sua sponte* except cases from the operation of a law but must take the law and apply it as the Legislature made and intended it, and this is the rule even when the exception would be an equitable one. Furthermore the sixty days' redemption period is in a measure at least analogous to our various statutes of limitations, and the general rule as to disabilities arresting the running of a statute of limitations is that after the statute has begun to run in the lifetime of the testator or intestate it does not cease to run during the period of time which may elapse between his death and the date of the appointment and qualifying of an administrator. [Wood on Limitations, Vol. 1, p. 12; Angell on Limitations, p. 51.] The reasons for the rule as to the Statutes of Limitations apply with equal force to the sixty days' right of redemption of this statute and in our view are as pertinent and cogent in construing the statute before us as they are to the Statute of Limitations. Therefore we hold that, absent any exception in the statute itself, the sixty days' period of redemption having once begun to run the subsequent death of McPike did not stop it. [Austin v. Shipman, 160 Mo. App. 206, 217, 141 S. W. 425; Griesel v. Jones, 123 Mo. App. 45, l. c. 50, 99 S. W. 769; Stanton v. Gibbins, 103 Mo. App. 264, 77 S. W. 95; Schlueter v. Albert, 39 Mo. App. 156.]

In Stanton v. Gibbins, supra, the question was directly before the court as to whether the death of the mortagee and payee of a note, before the note was barred, arrested the running of the statute until an administrator was appointed. In the course of the opinion it was held:

"The rule is that where the decedent is the debtor, limitation does not run against his creditor in favor of his estate during the time administration is delayed. But where the decedent is the creditor and limitation has begun to run before his death, it will continue to run, without interruption, after his death, notwithstanding administration is not had on his estate. In other

words, the heirs of a creditor whose claim matured before his death, as in this case, cannot prolong the Statute of Limitations in their own favor by delaying to take out letters of administration on their ancestor's estate.''

In light of the distinction pointed out in the case of Stanton v. Gibbins, supra, we are inclined to the view that plaintiff here is seeking to prolong the statute in his own favor on account of the delay in taking out letters of administration and that the estate of McPike should be subject to the rules applicable to the estate of decedent creditors, because under the language of the statute the burden is placed upon McPike to move within the time prescribed therein for the recovery of his ring, just as the burden is placed on the creditor to sue for the recovery of his debt within the time prescribed by the Statutes of Limitations.

In adopting this rule we believe the same is consonant with justice and reason and results in a fixed and certain rule which is in harmony with the spirit and policy of the statute in question without doing violence to the rights of any parties to be affected thereby. To adopt the rule contended for by appellant here would be giving a strained and unreasonable construction to the statute, and it would practically make it necessary in each instance before the pledge could be forfeited and sold for the pawn broker to assure himself that the person who pawned the article was alive at the time. This would be difficult in many cases, and in others impossible.

It follows from what we have said that the learned trial court erred in submitting the case to the jury; and that the judgment should be and the same is hereby reversed. *Reynolds, P. J.,* and *Allen, J.,* concur.